IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DEPARTMENT OF EDUCATION, STATE OF HAWAI'I, and CHRISTINA M. KISHIMOTO, in her official capacity as Superintendent of the Hawai'i Public Schools,<br><br>        Plaintiffs-Appellants/<br>        Counterclaim<br>        Defendants,<br><br>    vs.<br><br>L.S., by and through her Mother, C.S.,<br><br>        Defendants-<br>        Appellees/<br>        Counterclaimants. | CIVIL NO. 18-cv-00223 JAO-RT<br><br>**ORDER AFFIRMING IN PART AND REVERSING IN PART ADMINISTRATIVE HEARING OFFICER'S FINDINGS OF FACT, CONCLUSION OF LAW AND DECISION** |

**ORDER AFFIRMING IN PART AND REVERSING IN PART
ADMINISTRATIVE HEARING OFFICER'S FINDINGS OF FACT,
CONCLUSION OF LAW AND DECISION**

## I.  INTRODUCTION

This Individuals with Disabilities Education Act ("IDEA") appeal, brought by the Hawai'i Department of Education ("DOE"), seeks reversal of the Findings of Fact, Conclusions of Law and Decision (the "Decision") issued in administrative case number DOE-SY1718-028 by the Administrative Hearings Officer ("AHO") on May 14, 2018.  The AHO concluded that DOE denied L.S.

("Student") a free and appropriate public education ("FAPE") under the IDEA and was required to reimburse Student's mother ("Parent") for the cost of a private education. Student and Parent (collectively "Petitioners") have cross-appealed, seeking to overturn the Decision on several issues decided in DOE's favor. The Court AFFIRMS the AHO's conclusion that DOE denied Student a FAPE but REVERSES the award of full tuition reimbursement and REMANDS the case for the AHO to enter findings and a decision regarding the reasonableness of the requested reimbursement, and to calculate a new reimbursement award consistent with this Order.

## II.    BACKGROUND

Student is an eighteen-year-old with Autism Spectrum Disorder Level II; depression and anxiety; and rapid-onset obesity with hypothalamic dysregulation, hypoventilation, and autonomic dysregulation, referred to as ROHHAD. ECF No. 2-1 at 6; Admin. Hr'g Tr. at 24:17–23. ROHHAD is a rare syndrome that affects the autonomic nervous and endocrine systems. ECF No. 2-1 at 4. Student has a below-average IQ and is developmentally immature. *Id.* at 6. Her autism is considered moderate and it impacts her cognition. *Id.* at 6. She exhibits defiant behavior and aggression, such as cursing, yelling, and name calling. *Id.* at 8.

Prior to December 2016, Student attended public school and had an IEP covering the school year from August 2016 to August 2017 ("2016 IEP"). *See*

ECF No. 10-4 [DOE's Admin. Hr'g Ex. 3] at 32–45.[1]  The 2016 IEP provided

Student with special education classes, counseling, and transportation.  *Id*. at 43.  It

also provided for extended school year services ("ESY") of four hours per day

whenever there was a break in her regular special education program for more than

two weeks, such as during school breaks, to help prevent regression of learned

information and skills.  *Id.*  The 2016 IEP included an assessment of Student's

abilities in English and math, as well as her social, emotional, and behavioral

skills.  *Id.* at 33–34.  It listed annual goals and measurable objectives in English,

math, self-sufficiency (cooking and shopping), and social behavior, including

reducing her opposition to instruction.  *Id.* at 36–42.  It also stated that Student has

a separate Behavioral Support Plan ("BSP") and an Emergency Action Plan.  *Id.* at

43.

Student stopped attending public school in December 2016.  ECF No. 2-1 at

11.  Although the record is unclear, it appears that Student stopped attending in

part because of an incident when she became violent on a school bus and was

arrested.  *See* Admin. Hr'g Tr. at 14:1–14.  On January 23, 2017, Parent filed a

complaint against DOE and requested an impartial due process hearing.  ECF No.

10-2 [DOE's Admin. Hr'g Ex. 1] at 1.  While the administrative hearing complaint

was pending, Parent sought the help of Dr. Karen Tyson, a private clinical

---

[1] The Court refers to the continuous Bates-styled pagination where applicable.

psychologist. Dr. Tyson performed a psychological evaluation on Student and designed a personalized therapeutic program for her ("the Tyson Program"). ECF No. 2-1 at 11. Student began attending the Tyson Program in May 2017. *Id.*

DOE and Parent settled the January 2017 complaint by agreeing that DOE would pay for two months of the Tyson Program, through July 2017. ECF No. 10-2 [DOE's Admin. Hr'g Ex. 1] at 1. The agreement also required DOE and Parent meet before the new schoolyear to create a new IEP for Student. *Id.* at 2. It also provided Parent with reimbursement for transporting Student to and from the Tyson Program. *Id.*

On July 7, 2017, DOE emailed Parent to schedule the IEP meeting on July 26 or 27, 2017. ECF No. 10-7 [DOE's Admin. Hr'g Ex. 6] at 137; ECF No. 2-1 at 11. Parent responded to the email on July 8, 2017, accusing DOE of delaying the meeting too long, but Parent did not accept the dates proposed. ECF No. 2-1 at 11. DOE sent a follow-up certified letter proposing the same dates. *Id.* Both the email and the follow-up letter requested that Parent consent to DOE's observation of Student at the Tyson Program, and to allow DOE to contact Dr. Tyson to discuss Student's disability and needs, as it would be "useful in determining appropriate placement and/or programming to support [Student's] success at school." ECF No. 10-7 [DOE's Admin. Hr'g Ex. 6] at 137–38. DOE sent another certified letter on July 19, 2017, proposing the IEP meeting for July 26 or August 1, 2017, and again

4

requesting consent to contact Dr. Tyson and invite her to the IEP meeting. *Id.* at 144. Parent did not respond. ECF No. 2-1 at 12. DOE then sent an email and another certified letter on August 1, 2017, proposing the IEP meeting for August 2 or 7, 2017, and again seeking permission to contact Dr. Tyson and invite her to the IEP meeting. ECF No. 10-7 [DOE's Admin. Hr'g Ex. 6] at 150–51. DOE requested that the IEP meeting be held before the school year began. *Id.* The letter explained that the new school year began on August 8, 2017, and the prior IEP expired on August 11, 2017. *Id.*

Parent requested to hold the IEP meeting on August 14, 2017. *Id*. at 158. On August 8, 2017, DOE sent a letter to Parent confirming the IEP meeting date of August 14, and again seeking consent to contact Dr. Tyson and to invite her to the IEP meeting. *Id.* For reasons unclear in the record, the August 14 meeting was then rescheduled to August 21, 2017. *Id.* at 164. On August 17, 2017, however, DOE sent a letter to Parent cancelling the August 21 meeting because Parent had not provided consent to contact Dr. Tyson. *Id.* at 164. The letter stated that Dr. Tyson's input regarding Student was "essential for [DOE] to review and consider when developing an appropriate program and placement for [Student]." *Id.* The letter again sought consent and stated that DOE would propose additional meeting dates. *Id.*

Parent provided DOE with the requested consent forms on August 17, 2017. *Id.* at 169. DOE then contacted Dr. Tyson to request permission to observe Student, but Dr. Tyson refused its observation request on the grounds that DOE had not yet paid for Student's tuition under the settlement agreement. *Id.* at 171; Admin. Hr'g Tr. 109:4–25; *see also* ECF No. 2-1 at 12–13.

On September 1, 2017, DOE sent a certified letter to Parent scheduling the IEP meeting for September 6, 2017. ECF No. 10-7 [DOE's Admin. Hr'g Ex. 6] at 169. Parent, however, did not appear for the IEP meeting, and could not be contacted by phone. ECF No. 10-7 [DOE's Admin. Hr'g Ex. 6] at 173. DOE sent a letter to Parent on September 15, 2017, rescheduling the IEP meeting for September 19, 2017. *Id.*

Parent testified that she was not provided a draft IEP prior to the September 19, 2017 IEP meeting, but the Decision found that Parent did receive a draft. *Id.*; ECF No. 2-1 at 13; ECF No. 11-3 [Pet'rs' Ex. No. 2]. However, DOE never sent Parent the BSP, which the IEP referenced. *See* Admin. Hr'g Tr. 210:12–23, 248:17–24, 366:10–367:17, 372:6–10. The Decision also found that Parent had falsely testified that she never received letters from DOE regarding scheduling of the IEP meeting. ECF No. 2-1 at 12, ¶¶ 49–50.

The IEP meeting was finally held on September 19, 2017. Parent and her attorney attended, as well as a DOE special education teacher, a behavioral health

specialist, the general education teacher, the district's student services coordinator, a health aide, a resource teacher, an education specialist, the public-school principal, the DOE attorney, and a Department of Health representative. *Id*. at 13. Dr. Tyson was not present. Dr. Tyson testified that neither Parent nor DOE invited her to attend. *See* Admin. Hr'g Tr. 77:10–17.

The record does not make clear what occurred during the IEP meeting. Parent testified that the only input she provided during the meeting was to share examples of behavioral issues Student had at the Tyson Program, and that Student remained impulsive, although with less frequency. *See* ECF No. 10-4 [DOE's Admin. Hr'g Ex. 3] at 59; Admin. Hr'g Tr. 213:23–214:5. Parent also testified, however, that she voiced concerns over the IEP's listed goals for Student, although she could not remember what concerns she raised. Admin. Hr'g Tr. 225:5–11. Parent also testified that she expressed concern regarding Student's transition back to public school, but that DOE said it would discuss transitioning services in a subsequent meeting. Admin. Hr'g Tr. 182:25–183:10. The Decision did not make factual findings regarding what was said at the IEP meeting, or what input or concerns Parent and her attorney raised.

Immediately after the IEP meeting, DOE mailed Parent a "proposed transition plan for [Student's] return to [public high school]." ECF No. 10-7 [DOE's Admin. Hr'g Ex. 6] at 196–97. The proposed transition plan specified two

half-days of academic and life-skills sessions prior to the start of classes. *Id.*

DOE's letter sought input from Parent on the proposed transition plan, but Parent

never provided input and never responded to DOE's request for another meeting.

*See* ECF No. 10-7 [DOE's Admin. Hr'g Ex. 6] at 196; Admin. Hr'g Tr. at 209:13–

21, 251:25–252:9.  DOE sent Parent the finalized IEP for the 2017–2018 school

year ("2017 IEP") on September 26, 2017.  ECF No. 10-7 [DOE's Admin. Hr'g

Ex. 6] at 176.

The 2017 IEP expanded upon the 2016 IEP by adding several new special

education services, such as applied behavior analysis, use of visual aids, and multi-

sensory presentation of information.  *Compare* ECF No. 10-4 [DOE's Admin. Hr'g

Ex. 3] at 43 *with id.* at 68.  It also provided that Student would "follow the

behavior support plan" daily.  ECF No. 10-4 [DOE's Admin. Hr'g Ex. 3] at 68.  A

BSP was drafted but was not included with the 2017 IEP.  *See* ECF No. 10-5

[DOE's Admin. Hr'g Ex. 4] at 74–81.

Student did not return to public school.  Instead, Student remained at the

Tyson Program.  On January 18, 2018, Parent requested an administrative hearing,

arguing that the 2017 IEP denied Student a FAPE and seeking reimbursement for

all Tyson Program tuition costs.  *See* ECF No. 9-1.  The Administrative hearing

was held on April 20 and 23, 2018.  Admin. Hr'g Tr. at 1, 242.  The Decision

found that DOE denied Student a FAPE and ordered reimbursement in the amount

of $155,493.31 plus taxes for approximately eight months of tuition at the Tyson Program. ECF No. 2-1 at 38–44. The Decision also found that Parent had unreasonably delayed the IEP meeting and therefore concluded that DOE was not responsible for the Tyson Program tuition costs from August 1 to September 20, 2017. Parent does not challenge that portion of the Decision. DOE timely filed this appeal challenging the Decision's conclusion that DOE denied Student a FAPE. ECF No. 1.

## III.  STATUTORY FRAMEWORK

"The IDEA is a comprehensive educational scheme, conferring on disabled students a substantive right to public education[.]" *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1300 (9th Cir. 1992). Its goals are to "ensure that all children with disabilities have available to them a free [and] appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living," and to protect "the rights of children with disabilities and [their] parents." 20 USC § 1400(d). The primary purpose of the IDEA is to ensure that disabled children are provided a FAPE, which is defined as "special education and related services" that are free, "meet the standards of the State educational agency," and "are provided in conformity with the individualized education program required" by the statute. 20 U.S.C. § 1401(9).

An IEP is a "written statement for each child with a disability that is developed, reviewed, and revised in accordance with [Title 20, United State Code,] [S]ection 1414(d)." 20 U.S.C. § 1401(14). Section 1414(d) specifies that IEPs must include (1) a statement of the present levels of educational performance; (2) a statement of measurable annual goals; (3) a description of how the annual goals will be measured and when progress reports will be provided; (4) a statement of the special education services and supports that will be provided, including the projected beginning date of these services and their anticipated frequency, location, and duration; (5) an explanation of the extent, if any, to which the child will not participate in the regular curriculum with non-disabled students; (6) a statement of any individual accommodations necessary to measure the child's academic achievement on standardized assessments; and (7) for children over sixteen, a statement of appropriate postsecondary goals including transition services needed to reach postsecondary goals. *See* 20 U.S.C. § 1414(d). The IEP must be "tailored to the unique needs of the handicapped child." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley*, 458 U.S. 176, 181 (1982). When formulating an IEP, school districts must allow parents to examine all records, participate in all meetings, and provide input. *See J.W. ex rel. J.E.W. v. Fresno Unified Sch. Dist.*, 626 F.3d 431, 432 (9th Cir. 2010). The IDEA provides

procedural requirements that school districts must follow in creating and

implementing an IEP, and dispute resolution procedures. *See* 20 USC § 1415.

Violations of the IDEA are categorized either as procedural or substantive.

A procedural violation occurs when a district fails to abide by the procedural

requirements. Procedural violations do not necessarily amount to a denial of a

FAPE. *See, e.g.*, *L.M. v. Capistrano Unified Sch. Dist.*, 556 F.3d 900, 909 (9th Cir.

2009). A procedural violation constitutes a denial of a FAPE where it "results in

the loss of an educational opportunity, seriously infringes the parents' opportunity

to participate in the IEP formulation process or causes a deprivation of educational

benefits." *J.L. v. Mercer Island Sch. Dist.*, 592 F.3d 938, 953 (9th Cir. 2010).

A substantive violation occurs when an IEP is not "reasonably calculated to

enable a child to make progress appropriate in light of the child's circumstances,"

*Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 137 S.Ct. 988, 1001

(2017), but the IDEA does not guarantee "the absolutely best or 'potential-

maximizing' education." *Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1314

(9th Cir. 1987). Rather, the IDEA provides a "basic floor of opportunity,"

*Rowley*, 458 U.S. at 201, and the educational benefits must be meaningful, not

trivial, *see M.C. v. Antelope Valley Union High Sch. Dist.*, 858 F.3d 1189, 1200

(9th Cir. 2017). Whether an IEP is reasonably calculated to enable a student to

make appropriate progress is judged under the "snapshot rule;" that is, the IEP is to

be evaluated from the time created, with the information available at the time, not from hindsight.  *See, e.g.*, *L.J. v. Pittsburg Unified Sch. Dist.*, 850 F.3d 996, 1004 (9th Cir. 2017); *Adams v. Oregon*, 195 F.3d 1141, 1149 (9th Cir. 1999).

When a parent or guardian believes that the IEP does not provide a FAPE, he or she may challenge the IEP through an administrative hearing.  20 USC § 1415(b)(6), (f)(1)(A).  If the court finds that the district failed to provide a FAPE, the court may impose reimbursement of private school costs incurred by the student.  *See* 20 USC § 1412(a)(10)(C)(ii).  The party seeking relief carries the burden of proof.  *Van Duyn ex rel. Van Duyn v. Baker Sch. Dist. 5J*, 502 F.3d 811, 819–20 (9th Cir. 2007).  To be awarded reimbursement, the parent must establish that the private school was appropriate for his or her child's unique needs.  *See C.B. ex rel. Baquerizo v. Garden Grove Unified Sch. Dist.*, 635 F.3d 1155, 1159–60 (9th Cir. 2011).  Parties aggrieved by the administrative hearing may appeal the decision in district court.  20 USC § 1415(i)(2).

## IV.    STANDARD OF REVIEW

The IDEA provides that a court, in reviewing a due process hearing, "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a  party; and (iii) basing its decision on the preponderance of the evidence, shall grant relief as the court determines is appropriate."  20 U.S.C. § 1415(i)(2)(C).  But "the provision that a reviewing court

base its decision on the 'preponderance of the evidence' is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley*, 458 U.S. 176, 206 (1982).

Under the IDEA, district courts give "considerably less deference to state administrative proceedings than they do in most instances of 'judicial review of . . . agency actions, in which courts generally are confined to the administrative record and are held to a highly deferential standard of review.'" *Anchorage Sch. Dist. v. M.P.*, 689 F.3d 1047, 1053 (9th Cir. 2012) (quoting *E.M. ex rel. E.M. v. Pajaro Valley Unified Sch. Dist. Office of Admin. Hrgs.*, 652 F.3d 999, 1005 (9th Cir. 2011). District courts review conclusions of law de novo, while at the same time giving "due weight" to the administrative hearing officer's findings. *See Ashland Sch. Dist. v. Parents of Student R.J.*, 588 F.3d 1004, 1008 (9th Cir. 2009); *Amanda J. ex rel. Annette J. v. Clark Cty Sch. Dist.*, 267 F.3d 877, 887 (9th Cir. 2001) ("Complete *de novo* review . . . is inappropriate.").

While "due weight" must be given to the administrative decision, the amount of deference afforded is informed by the hearing officer's carefulness and thoroughness. *See L.M. v. Capistrano Unified Sch. Dist.*, 556 F.3d 900, 908 (9th Cir. 2009); *J.W. ex rel. J.E.W. v. Fresno Unified School Dist.*, 626 F.3d 431, 440–41 (9th Cir. 2010); *see also Ashland*, 588 F.3d at 1009 ("In the end, however, the

court is free to determine independently how much weight to give the state hearing officer's determinations.").  Courts in the Ninth Circuit give deference to an administrative law judge's decision "when it 'evinces his [or her] careful, impartial consideration of all of the evidence and demonstrates his [or her] sensitivity to the complexity of the issues presented.'"  *J.W.*, 626 F.3d at 438 (quoting *Cty. of San Diego v. Cal. Special Educ. Hrg. Off.*, 93 F.3d 1458, 1466 (9th Cir. 1996)).

The burden of proof rests with the party challenging the administrative decision.  *Hood v. Encinitas Union Sch. Dist.*, 486 F.3d 1099, 1103 (9th Cir. 2007); *Clyde K. v. Puyallup Sch. Dist., No. 3*, 35 F.3d 1396, 1399 (9th Cir. 1994).

## V.    DISCUSSION

As an initial matter, the Court does not give substantial deference to the Decision's findings of facts and conclusions of law because the Decision does not demonstrate a "careful, impartial consideration of all the evidence" or a "sensitivity to the complexity of the issues presented."  *J.W.*, 626 F.3d at 438.  For example, with respect to ESY services, aside from quoting the language of the IEP and listing some generally applicable requirements, the analysis of this issue is short and conclusory.  ECF No. 2-1 at 37–38.  The Decision does not discuss whether providing ESY services after fourteen days rather than nine days amounts to a denial of a FAPE or how much if any of the reimbursement award was based on the asserted ESY inadequacy.

Similarly, with respect to transition services, the Decision does not apply the correct legal standards for procedural and substantive violations and fails to address several important issues. For example, the Decision relies almost exclusively on Dr. Tyson's testimony to conclude that a months-long comprehensive transition plan was required. *Id.* at 34–37. The Decision, however, does not address the contradictory evidence showing that Student was able to transition from public school to the Tyson Program exceptionally well after only three days. *See* ECF No. 11-16 [Pet'rs' Admin. Hr'g Ex. 17] at 106 ("[Student] was immediately eager and fully engaged in the [Tyson] program . . and only minor behavior outbursts were . . . resolved after three mornings and she adjusted into the program routines."). Equally concerning is the lack of discussion regarding Dr. Tyson's inherent self-interest in a longer and more comprehensive transition plan which would provide multiple months of funding of Tyson Program staff. *See* Admin. Hr'g Tr. at 50:3–52:8.

The Decision also does not clearly state whether DOE denied Student a FAPE by only specifying that "up to 20 hours per month" of mental health services would be provided to Student. The Decision states both that it was a procedural violation and that "Mother did not avail Student to receive the benefits of this

service." ECF No. 2-1 at 33. Thus, it is unclear to the Court whether the Decision found a denial of a FAPE on this basis.[2]

For these reasons, the Court gives little weight to the Decision's factual findings and conclusions of law. *See M.C. by and through M.N. v. Antelope Valley Union High Sch. Dist.*, 858 F.3d 1189, 1194–95 & n.1 (9th Cir. 2017) (holding that district court erred in deferring to hearing officer's findings where hearing officer was not thorough or careful).

## A. Whether the Decision Impermissibly Addressed Issues Beyond its Scope

DOE first argues that the AHO addressed issues that were not asserted in Petitioners' administrative complaint. ECF No. 20 at 45–46. The Court is unpersuaded.

Specifically, DOE argues that it was impermissible for the AHO to address whether the IEP's definition and duration of direct counseling services constituted a denial of a FAPE, because that issue was not raised in Petitioners' complaint. *See generally Cty. of San Diego v. California Special Educ. Hearing Office*, 93 F.3d 1458, 1465 (9th Cir. 1996) ("The scope of the administrative hearing . . . is limited to the 'complaint' raised to obtain the hearing.").

---

[2] Neither DOE nor Petitioners challenge the Decision's conclusion on this issue. Thus, the Court does not address it.

Petitioners' complaint, however, did raise the amount of direct counseling services. *See* ECF No. 9-1 at 5 ("Issue Six: Whether the IEP specifies the amount of direct related services in Counseling . . . ."). It also alleged that the "Clarification section [in the IEP] states that 405 minutes can be a variety of non-therapy-related activities and guarantees no minimum amount of actual therapy." *Id*. Further, Petitioners raised this concern at the hearing, but DOE never objected. *See* Admin. Hr'g Tr. at 13:7–12. Thus, the Court concludes that the AHO was not precluded from ruling on this issue.

Further, DOE's generalized assertion that "[w]hen comparing the issues contained in the Complaint to the issues identified by the AHO, it is clear that some issues were added by the AHO in addition to those in the Complaint," is equally without merit, as the Decision's list of issues is essentially the same as those listed in Petitioners' complaint. *Compare* ECF No. 2-1 at 5–6 *with* ECF No. 9-1 at 5–6. The Court declines to vacate any portions of the Decision on this basis.

**B.    Extended School Year ("ESY") Services**

The Decision concludes that DOE violated the IDEA by providing ESY services to Student after a break in instruction of fourteen days, because DOE did not have enough information to make such a determination. ECF No. 2-1 at 38. DOE challenges this conclusion and the Court agrees that the AHO erred here.

ESY is educational instruction beyond the normal academic year provided to students who need the additional instruction to retain information during a break in regularly scheduled classes, such as during the summer. Indeed, providing ESY services is the exception, not the rule. *N.B. v. Hellgate Elementary Sch. Dist. ex Rel. Bd. of Directors, Missoula Cty. Mont.*, 541 F.3d 1202, 1211 (9th Cir. 2008). ESY services are required only when the IEP team determines that ESY services are necessary to provide a FAPE. *Id.* ESY services are considered necessary for the provision of a FAPE only when the benefits gained during the regular school year "will be significantly jeopardized" without the provision of ESY services. *Id.* A petitioner seeking ESY services must show that "an ESY is necessary to permit [the child] to benefit from his [or her] instruction." *Id.* at 1212 (quoting *Cordrey v. Euckert*, 917 F.2d 1460, 1473 (6th Cir. 1990)). The burden of establishing the necessity of ESY services after a break of less than fourteen days rested with Petitioners. *See, e.g., Virginia S. ex rel. Rachael M. v. Dep't of Educ., Haw.*, 2007 WL 80814, at *12, 2007 U.S. Dist. LEXIS 1518, at *42 (D. Haw. Jan. 8, 2007).

Here, the 2017 IEP provides for ESY services to begin after a break in regular instruction of more than fourteen days. *See* ECF No. 10-4 [DOE's Admin. Hr'g Ex. 3] at 68. The fourteen-day period was the same period specified in Student's 2016 IEP. *Id.* at 43. The 2017 IEP allows for four hours per day of instruction and thirty minutes of counseling per week during the ESY period. *Id.*

at 68. The Decision found that DOE "did not have sufficient data to determine the amount of days before Student required [ESY] Services." ECF No. 2-1 at 37. The Decision also found that "Student's need for ESY is [sometime] after 9 days but it is unknown if 14 days is too long." *Id.* at 38.

However, Dr. Tyson's testimony that fourteen days was too long was not available to DOE when it created the 2017 IEP. Parent did not invite Dr. Tyson to the IEP meeting, nor provide any written submission by Dr. Tyson regarding ESY services before the 2017 IEP was created. Nor did Parent offer any other relevant evidence at the administrative hearing that would have been available to DOE when it created the 2017 IEP. Under the "snapshot" rule, the 2017 IEP should be evaluated based on information available at the time it was created. Petitioners failed to meet their burden of showing that the IEP's provision of ESY services, was not reasonably calculated to enable appropriate educational progress. *See J.W.*, 626 F.3d at 439; *Endrew F.*, 137 S.Ct. at 999. The Decision therefore incorrectly concluded that DOE denied Student a FAPE on these grounds.

Further, the Decision failed to consider that, even if it was somehow DOE's fault that it lacked sufficient information, it was Petitioners' burden to show that ESY services after less than a fourteen-day break were necessary for the provision of a FAPE. *See Van Duyn*, 502 F.3d at 819–20; *Virginia S.*, 2007 WL 80814, at *12, 2007 U.S. Dist. LEXIS 1518, at *42. At the administrative hearing,

Petitioners were required to establish that a fourteen-day break in services would "significantly jeopardize" the benefits gained during the regular school year. *Hellgate*, 541 F.3d at 1211. Although Petitioners presented Dr. Tyson's opinion that ESY services should ideally begin after some time less than fourteen days, this was not sufficient evidence that a fourteen-day break as opposed to a shorter break would significantly jeopardize the benefits gained.[3] *See* Admin. Hr'g Tr. at 117:18–120:16, 150:9–21, 153:14–154:7.

## C.  Transition Plan and Services

DOE challenges the Decision's conclusion that DOE violated the IDEA when it failed to provide a sufficient transition plan for Student to transition back to public school after several months at the Tyson Program.[4] *See* ECF No. 2-1 at 35–37, 43. The Court agrees that the AHO erred in this regard.

---

[3] Even if Parent had met her burden of proving that a fourteen-day break in instruction as opposed to a lesser break constituted a denial of a FAPE, the Court doubts that such a finding would have warranted full reimbursement of tuition. Rather, it seems the proper remedy in such a case would be reimbursement only for private instruction during days that DOE would not provide ESY services, in order to supplement the IEP. *See T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 167–68 (2d Cir. 2014) (holding that violation of required ESY services would not mandate reimbursement of entire school year).

[4] The "transition plan" at issue in this case is a plan to assist Student in transitioning back to public school. It is not the IDEA-required "transition services" for Students over sixteen to meet their postsecondary goals. 20 U.S.C. § 1414(d)(1)(A)(i)(VIII).

The Decision concluded that DOE denied Student a FAPE by failing to complete or discuss a "comprehensive transition plan" at the September 19, 2017, IEP meeting, because it "resulted in the loss of educational opportunity and seriously infringed on the Parent's opportunity to participate in the IEP formulation process." *See* ECF No. 2-1 at 37.

The Decision correctly noted that the IDEA does not specifically require a plan to ease the transition between placements. ECF No. 2-1 at 35. The IDEA lists requirements to be included in an IEP and states that no additional information is required to be included in an IEP that is not "explicitly required in this section." 20 USC § 1414(d)(1)(A)(ii). The question of whether the IDEA otherwise requires transition plans to be included in an IEP is unsettled. *See R.E.B. v. Haw. Dep't of Educ.*, 870 F.3d 1025, 1027–28 (9th Cir. 2017) *reh'g granted, opinion withdrawn by* 886 F.3d 1288 (9th Cir. 2018). In any event, the Court need not address this question because the fact that DOE elected to address transition services at a separate meeting with Parent would at most constitute a procedural violation. Thus, it would only constitute a denial of a FAPE if it "result[ed] in the loss of an educational opportunity, seriously infringe[d] the parents' opportunity to participate in the IEP formulation process or cause[d] a deprivation of educational benefits." *J.L. v. Mercer Island Sch. Dist.*, 592 F.3d 938, 953 (9th Cir. 2010).

Here, DOE did propose a transition plan, and sent it to Parent on September 19, 2017, the same day as the IEP meeting and before DOE sent Parent the finalized IEP. ECF No. 10-7 [DOE's Admin. Hr'g Ex. 6] at 196–97. DOE also requested another meeting to discuss any of Parent's concerns or input into the transition plan. *Id.* In doing so, DOE did not seriously infringe upon Parent's opportunity to participate in the IEP formulation process. Parent failed to respond to the request for a transition plan meeting, and indeed testified at the hearing that she purposefully declined to discuss the transition plan because she believed the IEP was already flawed in other respects. *See* Admin. Hr'g Tr. at 209:13–21, 251:25–252:9. There is thus no basis to conclude that DOE's proposal to discuss the transition plan at a separate meeting seriously infringed upon Parent's opportunity to participate.

Petitioners have similarly failed to show how DOE's request for a separate discussion of the transition plan amounted to a loss of educational opportunity or deprivation of educational benefits. Such a meeting would have allowed Parent to raise concerns about the transition plan. The Court cannot assume that DOE would not have accommodated Parent's concerns about the transition plan had they been raised.

The Decision also concluded that Student required a "comprehensive transition plan" whereby DOE would first observe Student at the Tyson Program,

then "gradually transition" Student back to public school over "multiple months."
ECF No. 2-1 at 36. The Decision required DOE's continued payment of the Tyson
Program tuition during the multiple months of gradual transition, which included
allowing for Tyson Program staff to attend public school with Student and
"interact with staff and students" at public school. *Id.* at 42. Thus, the Decision
must necessarily have found that the DOE proposed transition plan was a
substantive violation of the IDEA.[5]

In response to DOE's challenge to this part of the Decision, however,
Petitioners contend only that DOE denied Student a FAPE when it proposed a
separate meeting to discuss the transition plan, rather than discussing Student's
transition needs during the IEP meeting and providing for those needs in the 2017
IEP. *See* ECF No. 26 at 21–24. At oral argument, Petitioners conceded that they
do not challenge the sufficiency of the DOE-proposed transition plan, only that it
was not discussed during the IEP meeting.

In any event, the Court finds it was error for the AHO to mandate the
months-long transition plan. A substantive violation occurs when the IEP,
evaluated under the "snapshot" rule, is not reasonably calculated to enable a

---

[5] The transition plan proposed by DOE consisted of two half days, either in the
morning or afternoon. DOE's Admin. Hr'g Ex. 6 at 196–197. Each day included
educational blocks of different subjects, with breaks and meals built in, aimed at
helping Student transition from her time at the Tyson Program back to public
school where she had been previously. *Id.*

student to make progress appropriate to the child's circumstances. *See Endrew F.*, 137 S.Ct. at 999; *J.W.*, 626 F.3d at 439. Thus, at the administrative hearing, Petitioners had the burden of establishing that the DOE transition plan was not, at the time it was proposed, reasonably calculated to enable Student to make appropriate progress. *See Van Duyn*, 502 F.3d at 819–20. The Decision, however, failed to address this standard and did not take the "snapshot rule" into account. *J.W.*, 626 F.3d at 439.

There does not appear to be any dispute that at the time it proposed its transition plan, DOE was aware that (1) Student had previously been enrolled in public school; (2) Student had been attending the Tyson Program for approximately four months; (3) Student had difficulty with transitions, *see* ECF No. 10-4 [DOE's Admin. Hr'g Ex. 3] at 59; and (4) Student successfully transitioned to the Tyson Program within only a few days of beginning that program, *see* ECF No. 10-5 [DOE's Admin. Hr'g Ex. 4] at 83. The Decision erred to the extent it concluded that the two-day transition plan proposed by DOE was not reasonably calculated to enable Student to make appropriate progress. Student had previously transitioned successfully to the Tyson Program in only a few days, and thus it was reasonable for DOE to assume Student could do the same back to public school. *See* ECF No. 10-5 [DOE's Admin. Hr'g Ex. 4] at 83.

This is particularly true under the "snapshot rule," because Parent never provided any input regarding the transition plan. *See* ECF No. 10-7 [DOE's Admin. Hr'g Ex. 6] at 196–97; Admin. Hr'g Tr. at 209:13–21, 252:1–9. Nor did Parent at any time invite Dr. Tyson to discuss her concerns or input regarding the transition plan with DOE. Admin. Hr'g Tr. at 77:6–17, 209:22–210:10. And Dr. Tyson refused to allow DOE to observe Student at the program despite its requests to do so. *Id.* at 45:6–46:1, 362:10–16; ECF No. 10-7 [DOE's Admin. Hr'g Ex. 6] at 171. Thus, the Court concludes that at the time the 2017 IEP was created, DOE's proposed two-day transition plan was reasonably calculated to enable Student to make appropriate progress, and that DOE did not violate the IDEA with such a proposal. The Decision's conclusion that DOE failed to provide a FAPE by not designing a months-long comprehensive transition plan is therefore reversed.

## D. Direct Counseling Services

DOE challenges the Decision's conclusion that DOE violated the IDEA by defining the term "counseling" too broadly in the 2017 IEP, and by only providing for 405 minutes per quarter of counseling.[6] *See* ECF No. 2-1 at 31–32; ECF No. 20 at 43–45. The Court concludes that DOE did not violate the IDEA in this respect.

---

[6] Petitioners argue that DOE waived this argument by failing to adequately address the definition of counseling in their brief. *See* ECF No. 26 at 12–14. The Court, finds DOE's briefing sufficient to warrant the Court's resolution of this issue.

First, with respect to the definition of "counseling" provided in the 2017 IEP, the Decision found that Petitioners proved that the 2017 IEP "failed to specify[] Student's amount of direct related services in counseling" because the definition of counseling was improperly overbroad. ECF No. 2-1 at 31–32.

The Court interprets the Decision as finding a substantive rather than procedural violation.[7] Specifically, the AHO took issue with the inclusion of services beyond "one-on-one direct therapy." ECF No. 2-1 at 32. But the Decision appears to assume that only direct, one-on-one counseling was appropriate for Student. *Id.* The Court however, finds that the 2017 IEP, and its definition of counseling services, was reasonably calculated to enable Student to make appropriate progress. The 2017 IEP's definition of counseling includes individual or group counseling; parent counseling and training; observation of Student; and consultation and collaboration with others. ECF No. 10-4 [DOE's Admin. Hr'g Ex. 3] at 68. All of these are ways in which DOE staff could assist Student to meet her goals. *See* Admin. Hr'g Tr. 357:14–18. For example, working in group counseling sessions may help Student with socialization skills, and counseling with Parent may be required to address specific behaviors stemming from patterns at the home. Observation of Student would of course assist in

---

[7] The AHO found that "the statement itself is sufficient, as it addresses the frequency (per month), location (special education), and duration (405 minutes)." ECF No. 2-1 at 31.

understanding what behaviors must be addressed in the one-on-one counseling sessions. *See* Admin. Hr'g Tr. 380:12–19. Thus, the Court reverses the Decision to the extent it found a substantive violation of the IDEA with respect to the definition of counseling services.

The Decision also found a substantive violation for the 2017 IEP's alleged failure to allocate enough time for counseling. The Decision stated that even if the definition of counseling included only "one-on-one direct therapy," Student requires "more than 45 minutes per week, or 405 minutes per month of [one-on-one direct] counseling, to properly address Student's inappropriate behavior."[8] ECF No. 2-1 at 32. Whether the 2017 IEP denied Student a FAPE by providing only a minimum of 405 minutes of counseling per quarter is determined by assessing whether, at the time it was created, the IEP was reasonably calculated to enable Student "to make progress appropriate in light of the child's circumstances." *Endrew F.*, 137 S.Ct. 988 (2017).

Petitioners failed to meet their burden of establishing that at the time DOE created the 2017 IEP, a minimum of 405 minutes of counseling per quarter was not reasonably calculated to enable Student to make appropriate progress. During the

---

[8] It is unclear precisely what the Decision concluded, because the Decision equated 405 minutes per month with 45 minutes per week (which is not correct), when the IEP requires 405 minutes per quarter. *Compare* ECF No. 2-1 at 32 ("Student requires more than 45 minutes per week, or 405 minutes per month[.]") *with* DOE's Admin. Hr'g Ex. 3 at 43 ("405 mins per QRTR").

hearing, Petitioners presented only Dr. Tyson's opinion that 405 minutes of counseling was insufficient.  But the testimony from Dr. Tyson on this issue was minimal at best.  Dr. Tyson testified:

> For example, counseling of 405 minutes per quarter.  When you break that down into three months, 405 minutes, that means she's, you know, not even getting an hour a week of therapy.  And one of our main issues with this young lady is behavioral problems.  She's not getting any [Applied Behavior Analysis] services.  And given the fact that behavior is a major problem, there's not services there for her.

Admin. Hr'g Tr. at 87:10–16.  This is not sufficient evidence that 405 minutes per quarter of counseling was not reasonably calculated to enable appropriate educational progress.  Moreover, Parent did not provide any evidence that DOE should have known that 405 minutes was insufficient based on the information it had at the time.  Petitioners never presented Dr. Tyson's opinion to DOE during the 2017 IEP formulation process, nor does it appear that Parent requested increasing the amount of counseling for Student during the IEP meeting.  Admin. Hr'g Tr. 365:1–6.

Further, the 2017 IEP offered more than counseling to address Student's behavioral and mental health objectives.  The 2017 IEP also provided Student with daily "Applied Behavior Analysis," which Dr. Tyson stressed the importance of, Admin. Hr'g Tr. at 87:14–15, and up to twenty hours per month of "intensive mental health services."  ECF No. 10-4 [DOE's Admin. Hr'g Ex. 3] at 68.  It also provided daily "individual instructional support."  *Id.*  Petitioners did not meet

their burden to show that it was unreasonable for DOE to conclude that 405 minutes per quarter of counseling, in addition to the many other services offered, would enable Student to make appropriate progress. The Court finds that the 2017 IEP—including the 405 minutes of counseling—was reasonably calculated to enable Student to make appropriate educational progress and reverses the Decision on that issue.

**E.      Behavioral Support Plan ("BSP")**

DOE also challenges the Decision's conclusion that it denied Student a FAPE by failing to sufficiently describe Student's "necessary behavioral supports," in the 2017 IEP. ECF No. 2-1 at 34–35. The Court affirms the Decision in this regard and concludes that DOE failed to provide student a FAPE when it did not incorporate into the 2017 IEP measures that were reasonably calculated to address Student's behavioral needs.

The IDEA requires that where a child's behavior "impedes the child's learning or that of others," the IEP team must "consider the use of positive behavior interventions and supports, and other strategies, to address that behavior." 20 USC 1414(d)(3)(B)(i). Courts agree that where a student's behavioral issues impede appropriate learning, the IEP must reasonably address those behavioral issues. *See, e.g.*, *Endrew F.*, 137 S.Ct. at 996–997 (requiring application of IDEA's "reasonably calculated" standard to IEP of student who "exhibited

multiple behaviors that inhibited his ability to access learning in the classroom");

*E.H. v. Board of Educ. of Shenendehowa Cent. Sch. Dist.*, 361 Fed. Appx. 156, 161

(2d. Cir. 2009) (IEP satisfied requirement "to address behaviors with the potential

to impede his learning"); *Carrie I. ex rel. Greg I. v. Dept. of Educ., Haw.*, 869

F.Supp.2d 1225, 1242, 1246 (finding denial of a FAPE when IEP did not contain a

behavioral support plan for student with significant behavioral issues).  Indeed, the

Ninth Circuit has found a denial of a FAPE where necessary services were not

made part of the IEP, because services unincorporated into the IEP could be

changed unilaterally and did not have the same procedural safeguards as an IEP.

*See M.C.*, 858 F.3d at 1198–99.

Here, Student had behavioral issues that impeded her ability to make

appropriate educational progress.  *See* DOE's Admin. Hr'g Ex. 3 at 34, 59.  For

example, Student's 2016 IEP noted that she often left class and refused to return,

made verbal threats to staff and peers, and refused to obey teacher's instructions.

*Id.* at 34.  The 2016 IEP specifically reported that Student's commonplace refusal

to attend class "kept her from keeping up with her assignments."  *Id.*  It also

reported that in 2016, Student was diagnosed with "Oppositional Defiant" and

"Attention Deficit/Hyperactivity" disorders.  *Id.*  There is no dispute that DOE was

aware of these significant behavioral issues.  *Id.*

The 2017 IEP attempted to address Student's behavioral issues in in part by requiring that DOE "follow [the] Behavioral Support Plan" daily. However, the BSP was never made part of the IEP, and was never sent to Parent during the formulation of the IEP. *See* ECF No. 10-7 [DOE's Admin. Hr'g Ex. 6] at 176–195; ECF No. 11-3 [Pet'rs' Admin. Hr'g Ex. 2]; Admin. Hr'g Tr. at 210:12–23, 248:17–24, 366:10–367:17, 372:6–10. Indeed, Parent saw the BSP for the first time at the administrative hearing. Admin. Hr'g Tr. at 210:12–23.

Failing to incorporate the BSP into the IEP in this case was a procedural violation that seriously infringed on Parent's ability to meaningfully participate in the formation of Student's IEP. *See J.L. v. Mercer Island Sch. Dist.*, 592 F.3d 938, 953 (9th Cir. 2010). Because the BSP was not made part of the IEP, the district was free to amend or curtail the BSP without Parent's knowledge or input, which seriously infringes upon her right to participate in the IEP process. *See M.C.*, 858 F.3d at 1198-99. Indeed, DOE failed to send the BSP to Parent, thus precluding her from providing any input into it. The facts in this case demonstrate the need for parent participation, because had Parent seen the BSP, she may have objected to the fact that significant portions of the BSP were not completed. *See* ECF No. 10-5 [DOE's Admin. Hr'g Ex. 4] at 75, 76, 80, 81.

But even assuming, as DOE argues, that BSPs are never required to be made part of an IEP, the Court concludes that the behavioral support services that are

part of Student's IEP were insufficient to be reasonably calculated to address Student's behavioral needs such that she could make appropriate educational progress. Although the annual behavioral goals and their corresponding benchmark objectives appear reasonable, the services and supports provided to achieve those goals are unreasonably lacking. Other than the BSP, the IEP only provides for daily "applied behavior analysis" and "positive reinforcement," along with at least 405 minutes of counseling per quarter. These IEP services are not sufficiently detailed to reasonably address Student's behavioral needs. Further, although the counseling services appear to be aimed at addressing Student's behavioral issues, *see* Admin. Hr'g Tr. 357:15–18, the IEP did not specify whether a behavioral health specialist would conduct any of the counseling. The IEP does not provide sufficiently specific resources and supports to be reasonably calculated to address Student's significant behavioral issues so as to allow her to make appropriate progress.[9]

Thus, the Court affirms the Decision's conclusion that DOE violated the IDEA and denied Student a FAPE by (1) failing to incorporate the BSP into the IEP or to otherwise provide Parent with a meaningful opportunity to participate

_____

[9] Although the Court also holds that the definition of *counseling* was not so overbroad as to deny a FAPE, *see supra* Section V.D., this does not conflict with the Court's conclusion here that when viewing the IEP's behavioral supports in the aggregate, the counseling services offered do not overcome the IEP's *behavioral services* deficiency.

and (2) by failing to provide sufficient behavioral supports in the IEP that are reasonably calculated to enable Student to make appropriate progress.

**F.      Annual Goals**

DOE's complaint challenged the Decision's conclusion that the 2017 IEP's annual goals were vague and overbroad.  See ECF No. 2 at 7 ¶ c.  However, other than raising this argument in its complaint, DOE's briefs are devoid of any support for this challenge and the Court refuses to address the issue.  *Martinez-Serrano v. I.N.S.*, 94 F.3d 1256, 1259 (9th Cir. 1996) ("[A]n issue referred to in the appellant's statement of the case but not discussed in the body of the opening brief is deemed waived."); *see also* ECF No. 27 at 22 (in which DOE argues that Petitioners waived issues by failing to include argument or support in its briefing).

**G.      Lack of Tyson Program Staff at IEP Meeting**

Petitioners' cross-appeal challenges the Decision's conclusion that Petitioners failed to prove that it was a denial of FAPE for DOE not to invite Tyson Program staff to the IEP meeting.  ECF No. 15 at 5; ECF No. 2-1 at 23–25. Petitioner's briefing, however, failed to address this issue.  *See* ECF No. 26.  For the same reason the Court refuses to consider DOE's unsupported arguments, the Court refuses to consider Petitioners' arguments here.

**H.      Whether the 2017 IEP was Student's Least Restrictive Environment**

Petitioner's cross-appeal also challenges the Decision's conclusion that Petitioners failed to provide sufficient evidence that the 2017 IEP did not comply

with the IDEA's Least Restrictive Environment ("LRE") requirements.  *See* ECF No. 15 at 5.  This contention is also not addressed in Petitioners' briefing and is therefore waived.

## I.     Alleged Administrative Hearing Procedural Errors

DOE contends that the AHO committed three procedural errors: (1) allowing Petitioners to conduct direct examination of DOE witnesses when petitioners did not name the DOE witnesses on their witness list; (2) allowing Petitioners to conduct direct examination of DOE witnesses when Petitioners had already closed their case-in-chief; and (3) considering "testimony and exhibits introduced prior to the [administrative hearing]."  ECF No. 20 at 49.  The Court finds no error and alternatively, even if there was error, none would warrant vacating any portions of the Decision.

Regarding the first alleged procedural error, the Court finds that the AHO did not err because the AHO explained that it was the AHO who had failed to give proper notice regarding the naming of other parties' witnesses.  Admin. Hr'g Tr. at 309:17–23.  Thus, it appears that Petitioners' mistake in not naming DOE's witnesses was a result of the AHO's lack of clear instructions on that point.

Second, regarding the allegation that the AHO erred by allowing Petitioners to conduct direct examination of DOE witnesses despite Petitioners closing their case in chief, the Court finds that DOE failed to object on this ground at the

hearing. *See* Admin. Hr'g Tr. at 309:2–3. DOE has not identified in the transcript where it objected on that basis.

Third, regarding the allegation that the AHO considered "testimony and exhibits introduced prior to the [administrative hearing]," ECF No. 20 at 49, the Court has not relied on any evidence that was not admitted at the hearing. Thus, any error was harmless.

## J.     Reimbursement

The Decision awarded Petitioners full reimbursement of Tyson Program tuition, minus some costs attributed to Petitioners' responsibility in delaying the IEP meeting.[10]  ECF No. 2-1 at 38–43. DOE challenges the reimbursement award on several grounds. *See* ECF No. 20 at 38–43. For the reasons set forth below, the Court concludes that full tuition reimbursement is not warranted here and reverses the Decision in this regard. The Court remands the case to the AHO to develop a record on the reasonableness of the Tyson Program tuition costs, and to determine how much reimbursement is warranted.

When a parent unilaterally places a child into private education, the state educational agency may be required to reimburse those tuition costs when the educational agency has not made a FAPE available to the child in a timely manner.

---

[10] None of the parties challenge the Decision's conclusion that Petitioners were responsible for paying for the tuition at the Tyson Program from August to September 20, 2017. ECF No. 2-1 at 43.

20 U.S.C. 1412 §(a)(10)(c). However, to be entitled to reimbursement, a parent must demonstrate not only that the district denied him or her a FAPE, but also that the private placement was "proper under the Act." *Florence Cty. Sch. Dist. Four v. Carter by and Through Carter*, 510 U.S. 7 (1993). For the private placement to be "proper," it need not comply with IDEA requirements, or state educational standards. *Id.* at 13–14. Indeed,

> [t]o qualify for reimbursement under the IDEA, parents need not show that a private placement furnishes every special service necessary to maximize their child's potential. They need only demonstrate that the placement provides educational instruction specially designed to meet the unique needs of a handicapped child, supported by such services as are necessary to permit the child to benefit from instruction.

*C.B. ex rel. Baquerizo v. Garden Grove Unified Sch. Dist.*, 635 F.3d 1155, 1159 (9th Cir. 2011) (citations and emphasis omitted).

"[O]nce a court holds that the public placement violated IDEA, it is authorized to 'grant such relief as the court determines is appropriate.'" *Carter*, 510 U.S. at 15–16 (citation omitted); 20 U.S.C. § 1415(i)(2)(C)(iii). Courts "enjoy[] broad discretion" in fashioning such relief, taking all relevant equitable considerations into account. 510 U.S. at 16 (quotations omitted). Regarding reimbursement, courts may consider any relevant factor, including the reasonableness of the private tuition, *Id.*, and the conduct of parents in the IEP formulation process, *Anchorage*, 689 F.3d at 1059; 20 U.S.C. § 1412(a)(10)(c)(iii). Parents who "unilaterally change their child's placement . . . without the consent of

state or local school officials, do so at their own financial risk." *Forest Grove Sch.*

*Dist. v. T.A.*, 557 U.S. 230, 247 (2009) (citations and quotations omitted).

   1. *The Tyson Program was appropriate.*

   DOE challenges the Decision's award of full tuition on the grounds that the

Tyson Program was not a proper placement because it (1) did not provide

significant educational benefit and (2) was not the Student's LRE.[11]  DOE argues

that the Tyson Program was not an academic program and did not have any

academic goals or objectives.  ECF No. 20 at 40.  DOE also contends that the

Tyson Program did not have a qualified special education teacher working directly

with Student.  *Id.* at 41.  But these arguments have been addressed by the Ninth

Circuit, which held that a private program does not need to meet all of a student's

educational needs, and merely needs to provide specially designed educational

instruction for the unique needs of the student.  *C.B.*, 635 F.3d at 1159.  Here,

although the Tyson Program was admittedly not an academic institution but a

"therapeutic day program," Admin. Hr'g Tr. 96:15-23, the program was specially

designed to meet Student's needs, particularly related to behavior and life-skills.

---

[11] Under the IDEA, disabled children must "[t]o the maximum extent appropriate,"
be "educated with children who are not disabled," and should only be placed in
"special classes, separate school, or other removal . . . from the regular educational
environment . . . when the nature or severity of the disability of a child is such that
education in regular classes with the use of supplementary aids and services cannot
be achieved satisfactorily."  20 U.S.C. § 1412(a)(5)(A).

*See* Admin. Hr'g Tr. 26:5–30:11, 138:11–139:10.  Even though the Tyson Program is not an academic institution, the program incorporated some academic subjects, including math, English, and science.  Admin. Hr'g Tr. 96:17–97:12, 97:21–98:5.

The Court also finds unpersuasive DOE's argument that the Tyson Program was not appropriate for Student because it did not comply with the IDEA's LRE requirements.  The Supreme Court has held that the IDEA's requirements of public schools are not applicable to private school placement.  *See Carter*, 510 U.S. at 13–14.  The IDEA was an "ambitious" piece of legislation enacted "in response to Congress' perception that a majority of handicapped children in the United States were either totally excluded from schools or [were] sitting idly in regular classrooms awaiting the time when they were old enough to drop out."  *Endrew F.*, 137 S.Ct. at 999.  Thus, the protections afforded disabled Students in public institutions are not necessarily available in the private educational marketplace.  It may be that no private school placement available to Student would have provided an LRE environment.  *See also C.B.*, 635 F.3d at 1160 (noting that a reduction in reimbursement is not required just because a parent "cannot find a program" that provides everything).  Thus, the argument that parents may not receive reimbursement when the private placement does not comply with the IDEA's LRE requirements is without merit.

2. *Equitable considerations warrant reducing the award.*

DOE also argues that equitable considerations warrant a reduction of reimbursement in this case. *See* ECF No. 20 at 38–43. Although the reasonableness of the Tyson Program tuition costs was never addressed at the administrative hearing, the Court finds that the reimbursement award must be reduced based on both the reasonableness of the tuition and Parent's conduct during the IEP formulation process. *See Anchorage*, 689 F.3d at 1053.

First, the Court finds that the Tyson Program tuition is unreasonable because it includes redundant, excessive, and improper services far beyond what Student requires. *See C.B.*, 635 F.3d at 1160 (reduction appropriate where private placement provides "services beyond required educational needs" or "if it is overpriced"). The Tyson Program charged Parent for two one-on-one trainers to work with Student at all times of the Program at $1050 per trainer per week. ECF No. 11-15 [Pet'rs' Admin. Hr'g Ex. 16] at 104–05. It also charged Parent for additional trainers to work with Student for specified portions of the program in varying degrees at the same time the two full time trainers were working with Student. *Id.* Thus, the program charged Parent for up to three individual staff members to work directly with Student at the same time. *See id.* The Tyson Program even charged Parent for at least two individual trainers to work with Student during breaks and lunch periods. *Id.* at 94, 104–05. The number of

individual trainers working with Student at the same time appears excessive. Further, the Tyson Program's administrative costs billed directly to Parent appear grossly overbilled at twenty hours every month at various staff members' regular hourly rates, for as much as $150 per hour. *Id.* at 104–05. The Tyson Program also charged for Student to spend time with Dr. Troy Tyson, whose role is only listed as "educational program oversight and technology," and for two staff members to provide "ABA program oversight." *Id.* It is unclear what necessary and non-redundant services these staff members provide to Student. *Id.* Dr. Tyson also testified that there are sometimes two other children in the same room as Student and that the three students do some activities together.[12] Admin. Hr'g Tr. at 44:11–45:3. Parent or the DOE should not have to pay the full hourly rate for instructors when there are other children benefitting from that instruction.

In light of these redundancies and excessive tuition costs, the Court concludes that reduction of the reimbursable tuition costs is warranted and remands the case to the AHO to develop the record as needed and to determine how much of the Tyson Program tuition is reasonable for reimbursement.

---

[12] Dr. Tyson testified that the three students will "do activities together daily, such as cooking, having lunch, going on outings." According to the Tyson Program schedule, it appears that approximately one third of the program is spent preparing and eating lunch and going on community outings. *See* ECF No. 11-15 [Pet'rs' Admin. Hr'g Ex. 16] at 94

Second, the Court finds that Parent's conduct in collaborating with DOE during the 2017 IEP formulation process was detrimental to DOE's ability to provide Student with a FAPE and affirms the AHO's finding that Parent "did not come with clean hands." ECF No. 2-1 at 41. One of the primary goals of the IDEA is to allow parents to play a "collaborative role" in the development of a child's IEP. *Timothy O. v. Paso Robles Unified Sch. Dist.*, 822 F.3d 1105, 1111 (9th Cir. 2016). Here, Petitioners did not adequately apprise DOE of their concerns with the IEP, impeding DOE's ability to address those concerns. Thus, a further reduction in tuition reimbursement is appropriate.

For example, DOE sent Parent a letter seeking her input into the transition plan. ECF No. 10-7 [DOE's Admin. Hr'g Ex. 6] at 196–197. But Parent intentionally declined to provide DOE with her concerns about the transition plan, testifying that there was no point in providing DOE with feedback because other portions of the IEP were not valid. *See* Admin. Hr'g. Tr. at 251:25–252:9. At the administrative hearing, Parent argued that the transition plan was not sufficient. *See* Admin. Hr'g. Tr. at 194:22–195:21. Had Parent or her attorney provided DOE with Petitioners' concerns about the transition plan, perhaps DOE would have accommodated the transition plan and avoided the entire transition plan issue at the administrative hearing. Instead, Petitioners hid their concerns over the transition

plan and then ambushed DOE at the administrative hearing with testimony on why the transition plan was insufficient.

Parent also testified at the administrative hearing that she wanted DOE to incorporate Dr. Tyson's methods into the IEP, but Parent did not provide DOE with information as to what those methods were, either by apprising herself of Dr. Tyson's methods and informing DOE of them at the IEP meeting, or by inviting Dr. Tyson to the IEP meeting. *See* Admin. Hr'g Tr. 184:17–185:2. Had Parent provided DOE with information on what behavioral supports worked for Student that should be incorporated into the IEP, or invited Dr. Tyson to the IEP meeting, those behavioral supports may have been implemented into the IEP to the satisfaction of Parent and a FAPE may have been provided.

In sum, based on the totality of the record before the Court, it appears that Petitioners did not sufficiently attempt to apprise DOE of the problems with the IEP, or how it could be made sufficient, before seeking reimbursement of private tuition costs. The Court agrees with the Decision's finding about Parent's lack of cooperation, but not its failure to take this into account when awarding reimbursement. *See* ECF No. 2-1 at 41. The Court thus finds that a reduction in the reimbursement award by 25% is appropriate in this case. This 25% reduction should be applied after the reductions to the reasonable cost of the Tyson Program.

The Court remands the case to the AHO to calculate a new reimbursement award consistent with this Order.

## VI.    CONCLUSION

For the reasons set forth above, the Court AFFIRMS the Decision's conclusion that DOE denied Student a FAPE but REVERSES the award of full tuition reimbursement and REMANDS the case for the AHO to enter findings and a decision regarding the reasonableness of the requested reimbursement, and to calculate a new reimbursement award consistent with this Order.

IT IS SO ORDERED.

DATED: Honolulu, Hawai'i, March 29, 2019.

Jill A. Otake
United States District Judge

Civil No. 18-223-JAO-RT, *DOE v. L.S.*, ORDER AFFIRMING IN PART AND REVERSING IN PART ADMINISTRATIVE HEARING OFFICER'S FINDINGS OF FACT, CONCLUSION OF LAW AND DECISION